UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BILL DICKEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 4:10-CV-1818 (CEJ) |
| | ) |
| LOU FUSZ AUTOMOTIVE NETWORK, | ) |
| INC., et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff brings this action claiming that the defendants terminated his employment because of his age, in violation of the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. § 213.010, et seq. (Count I), and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623 (Count II). Before the Court is the motion for summary judgment filed jointly by defendants Lou Fusz Automotive Network, Inc. and Lou Fusz Dodge Company. Plaintiff opposes the motion and the issues have been fully briefed.

Defendants have also filed a motion to strike the affidavit of Bill Beattie submitted by plaintiff with his response to the summary judgment motion. Because the disputed affidavit does not affect the Court's ruling, defendants' motion to strike is moot.

I. Background

Defendant Lou Fusz Automotive Network, Inc. owns and operates multiple automotive dealerships in and around St. Louis, Missouri, including defendant Lou Fusz Dodge. Plaintiff was employed by Lou Fusz Dodge from January 2002 until May 5, 2008. From September 2007 until his discharge, plaintiff was one of three finance

managers. His primary duties included assisting customers with vehicle financing options, arranging financing, and selling optional maintenance and warranty products. During the same time period, Lou Fusz Dodge also employed a "subprime manager" who was responsible for the sale and financing of pre-owned vehicles to customers with credit problems. Plaintiff's monthly compensation as a finance manager was based on commissions he earned on the sale of financing products minus a $2,500 monthly draw. As a finance manager plaintiff could also earn bonuses for the sale of certain extended warranty products and hazard insurance.

The defendants kept track of the finance managers' productivity through monthly "PinPoint" reports. Included in the reports were a finance manager's total income and net income resulting from the sale of financing products and the percentage of products sold, all calculated on a per car basis. Based on a side-by-side comparison of the reported data, plaintiff's per unit gross and per unit net averages ranged from 35% to 80% lower than those of all the other Lou Fusz Dodge finance managers for each month during the period January 2006 to April 2008. For example, during March and April, 2008, plaintiff generated an average of $490 per transaction while the other two finance managers, Corey Bush and Luke Purewal, averaged $988 and $1143 per transaction, respectively. (Doc. 40-1, Exh F). The reports also show that plaintiff's monthly averages for the number of transactions handled ("units delivered") either equaled or exceeded those of the other finance managers during the period January 2007 to May 2008. However, it was the practice at Lou Fusz Dodge that transactions brought to the finance department by the sales staff were rotated between the finance managers such that each handled roughly the same number of transactions each month.

In September 2007, Lou Fusz Dodge moved from its Kirkwood, Missouri location to an expanded facility in O'Fallon, Missouri. It was anticipated that the move to a larger market would result in increased sales of as much as 150-200 cars per month. However, during the period September 2007 to April 2008, Lou Fusz Dodge sold an average of 113 cars per month.

After experiencing decreasing auto sales, Mark Mercer, the general manager of Lou Fusz Dodge, concluded that the dealership "didn't need three business managers to handle the number of customers we were selling to," and decided to eliminate one of the finance manager positions. (Doc. 35-4, p. 67). On May 5, 2008, Mercer, told plaintiff that he was being removed from his position as finance manager. Mercer offered plaintiff alternative employment as a car salesman at Lou Fusz Dodge, but plaintiff declined the offer. The compensation plan for salespersons consisted of a monthly draw of $1,250, commissions and bonuses. The commission rate of salespersons was higher than that of finance managers.

Shortly after his termination, plaintiff met with Lou Fusz, Jr., president of the Lou Fusz Automotive Network. Fusz told plaintiff that he supported Mercer's decision, and offered plaintiff a position as a salesman. When plaintiff expressed concern about his ability to sell cars, Fusz offered him a sales position at the Lou Fusz Saturn dealership. It was believed that plaintiff would not need the skill set typically required of car salesmen because the Saturn vehicle prices were fixed and non-negotiable. Plaintiff again declined the offer of an alternative position.

Plaintiff was 68 years old when his employment was terminated. He was the oldest of the three finance managers employed by Lou Fusz Dodge.

On the same day that plaintiff was terminated, Rick Hagar, a finance manager

at the Lou Fusz Mazda dealership, was transferred to Lou Fusz Dodge. Hagar, who was 47 years old, had worked as a subprime manager at two other Lou Fusz Automotive Network locations. After transferring to Lou Fusz Dodge, Hagar performed finance manager and subprime manager duties. During the month of May 2008, Hagar handled eight transactions compared to four handled by plaintiff and 42 and 39 handled by finance managers Bush and Purewal, respectively. Hagar worked for Lou Fusz Dodge for three weeks before quitting. No one was hired to replace him.

Edwin Ellinger, a former finance manager for Lou Fusz Dodge, testified that he heard Mercer state that plaintiff "was too old, could not keep up with the pace and it would be addressed." (Doc. #35-13, p. 60). In an affidavit, Ellinger states that Mercer made this and other statements about plaintiff's age and slow pace during two meetings that he attended in January 2008. The dates on which the meetings occurred are unknown, but According to Ellinger, at one of the meetings Mercer asked him and another finance manager if they thought plaintiff was too old and too slow to keep up with the customers. Ellinger testified that both he and the other manager responded in the negative. Ellinger related Mercer's statements to plaintiff after plaintiff was terminated. Plaintiff testified that, before hearing of the statements, he had no reason to think that his termination was age-related. Plaintiff also testified that in the months just prior to his termination, Doug Bowers, the general sales manager of Lou Fusz Dodge, mentioned to him several times that he should retire and move to the Virgin Islands with his son. Plaintiff acknowledged that Bowers had no authority with respect to plaintiff's employment or compensation.

II. **Legal Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary

judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. United of Omaha Life Ins. Co. v. Honea, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

III. Discussion

A. ADEA Claim

Under the ADEA, plaintiff may defeat defendants' motion for summary judgment by putting forth either (1) strong or "direct" evidence[1] that an adverse employment

---

[1] The Eighth Circuit has recently explained that "[d]irect evidence in this context is not the converse of circumstantial evidence, as many seem to assume.

action was based on plaintiff's age or (2) evidence that creates a reasonable inference of discrimination under the McDonnell Douglas burden-shifting analysis. Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011) (en banc) (citing McDonnell Douglas Corp. v.. Green, 411 U.S. 792 (1973)); Tusing v. Des Moines Independent Community School Dist., 639 F.3d 507 (8th Cir. 2011) (upholding the continued use of the McDonnell Douglas burden-shifting analysis at the summary judgment stage following Gross v. FBL Financial Services, Inc., 129 S.Ct. 2343 (2009)). Under either analysis, plaintiff at all times, "retains the burden of persuasion to prove that age was the "but-for" cause of the termination." Rahlf v. Mo-Tech Corp., Inc., 642 F.3d 633 (8th Cir. 2011) (quoting Gross, 129 S.Ct. at 2350).

1. **McDonnell Douglas Analysis**

Under the McDonnell Douglas framework, "plaintiff must first establish a four-part prima facie case of age discrimination." Rahlf v. Mo-Tech Corp., Inc., 642 F.3d 633, 637 (8th Cir. 2011) (internal citations omitted). To establish a prima facie case of age discrimination, "plaintiff must show that (1) he is over 40 years old, (2) he met the applicable job qualifications, (3) he suffered an adverse employment action, and (4) there is some additional evidence that age was a factor in the employer's termination decision." Id. Once the plaintiff has established these elements, the burden shifts to the defendant to rebut the prima facie case by coming forward with

---

Rather, direct evidence is evidence 'showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the adverse employment action. Thomas v. First Nat'l Bank of Wynne, 111 F.3d 64, 66 (8th Cir.1997). Thus, 'direct' refers to the causal strength of the proof, not whether it is 'circumstantial' evidence." Torgerson, 643 F.3d 1031, 1044 (quoting Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir.2004)).

evidence of a legitimate, nondiscriminatory reason for its employment decision. <u>Takele v. Mayo Clinic</u>, 576 F.3d 834, 839 (8th Cir. 2009). "If the employer does so, the plaintiff must show that the employer's proffered reason was pretext for discrimination." <u>Rahlf</u>, 642 F.3d at 637.

Viewing the evidence in a light most favorable to plaintiff, the Court finds that plaintiff has satisfied three of the four elements required for establishing a prima facie case of discrimination. The first element is established in that plaintiff was 68 years old at the time his employment was terminated. As to the third element, plaintiff has presented evidence that he suffered an adverse employment action in that significant terms of the sales positions offered to him were less favorable than those of the finance manager position. The fourth element is established by plaintiff's evidence of a remark attributed to a decision maker that plaintiff was "too old and too slow."

Plaintiff, however, cannot establish the second element of the prima facie case: that he was qualified for the position in that he was meeting defendants' legitimate performance expectations. Plaintiff asserts that the increases in his commission-based salary and the reports showing that his monthly transactions average was equal to or higher than that of his peers establish that he was otherwise qualified for the finance manager position. Because the finance managers handled roughly the same number of transactions brought to them by the sales staff each month, it would not be unusual for plaintiff's numbers to equal or sometimes exceed those of his peers. However, the defendants' productivity assessment was not based on the number of transactions handled. Rather, productivity was based on the income realized by the finance manager from the sale of financing products on the transactions handled. As discussed above, it is undisputed that plaintiff's averages were consistently and significantly lower

than those of his peers for each of the 16 months preceding his termination. A plaintiff claiming employment discrimination cannot establish that he was meeting expectations simply by pointing to certain performance categories in which he succeeded while failing to address the categories in he was undisputedly deficient. See Tusing, 639 F.3d at 516 ("[i]dentifying those strengths that constitute the best qualified applicant is, however, a role best left to employers.") (quoting Duffy v. Wolle, 123 F.3d 1026 (8th Cir. 1997).

Plaintiff's assertion that defendants never criticized his performance or put him on notice that he was underperforming is unavailing. Plaintiff offers no evidence that it was defendants' policy or practice to conduct employee performance reviews or to notify an employee of poor performance.

Even if the Court were to find that plaintiff has established a prima facie claim of age discrimination, the evidence is insufficient to show pretext. "In some cases, a strong factual showing that the employer's proffered reason is 'unworthy of credence' may, when combined with a strong prima facie case, create an inference of age discrimination." Tusing v. Des Moines Independent Community School Dist., 639 F.3d 507, 516 (8th Cir. 2011) (citations omitted). Regardless of the strength of plaintiff's prima facie case, "proof that the [defendants'] explanation is false is necessary, but not sufficient, to show a pretext for discrimination." Id. (citing Dixon v. Pulaski Cnty. Special Sch. Dist., 578 F.3d 862, 872–73 (8th Cir.2009). While it is appropriate for a court to examine the reasons given for an employment decision to determine pretext, it must be borne in mind that the court does not "sit as a 'super-personnel' department to second guess the wisdom of a business's personnel decisions." Evers v. Alliant Techsystems, Inc., 241 F.3d 948 (8th Cir. 2001); see also Tusing, 639 F.3d at 516.

Here, plaintiff has failed to show that defendants' proffered reason for terminating his employment is false. As discussed above, the evidence establishes that Lou Fusz Dodge fell short of its sales goals following the move to a larger facility in September 2007. Because there were fewer car sales, fewer finance managers were needed. Plaintiff's position was identified as the one to eliminate because he had been generating significantly less income than the other finance managers for more than a year.

Additionally, the transfer of a younger employee, Hagar, to the Lou Fusz Dodge finance department is not evidence of pretext. Hagar handled traditional transactions <u>and</u> subprime transactions ---work that plaintiff did not do. Also, Hagar was not placed in the same rotation with other finance managers as evidenced by the comparative number of transactions he handled. Finally, the evidence establishes that Lou Fusz Dodge did not employ more than two full-time finance managers after plaintiff's employment terminated, and no one was hired to replace Hagar after he quit. See Wittenburg, 464 F.3d at 840 ("To prove that her termination was because of her age, a plaintiff needs to present evidence that her 'discharge was part of a pattern of [the employer's] discharging employees over forty and distributing their work to younger employees.' ") (quoting Frieze v. Boatmen's Bank of Belton, 950 F.2d 538, 541 (8th Cir. 1991)).

Plaintiff's contention that defendants have given "shifting explanations" for his termination is without merit. In the administrative proceedings before the Equal Employment Opportunity Commission, the defendants identified market considerations

as a factor in the decision to reduce the number of finance managers.[2]  In his deposition, Mercer testified that he considered the performance of the three finance managers in deciding which one to eliminate.  There has been no inconsistency in the defendants' explanation of the reasons for plaintiff's termination.  See Baker v. Silver Oak Senior Living Management Co., L.C., 581 F.3d 684 (8th Cir. 2009) (citing EEOC v. Trans States Airlines, Inc., 462 F.3d 987, 995 (8th Cir.2006)) ("Not every supplement to an employer's initial statement of reasons gives rise to an inference of pretext, but substantial variations raise suspicion.")

### 2. "Direct" Evidence of Age Discrimination

Direct evidence of discrimination may be shown by "conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit the factfinder to find that attitude was more likely than not a motivating factor in the employer's decision." Thomas v. First Nat'l Bank of Wynne, 111 F.3d 64, 66 (8th Cir. 1997), *quoting* Kriss v. Sprint Communications Co., 58 F.3d 1276, 1282 (8th Cir. 1995). However, "[n]ot all comments that reflect a discriminatory attitude will support an inference that an illegitimate criterion was a motivating factor in an employment decision."  Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 449 (8th Cir. 1993). Accordingly, "stray remarks in the workplace, while perhaps probative of [unlawful discrimination] . . . cannot justify requiring the employer to prove that its [employment] decisions were based on legitimate criteria.  Nor can statements by non-

---

[2] In the position statement submitted to the EEOC, defendants wrote: "Because of the state of the automotive market, Lou Fusz Dodge decided to hire a new manager to concentrate on sub-prime customers, and decided to use only two finance managers."  (Doc. 40-4, Exh. U, p. BD 000421)

decision makers, or statements by decision makers unrelated to the decisional process itself, suffice to satisfy the plaintiff's burden" to establish that discrimination played a significant or substantial role in the employment decision. Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989)(citation omitted).

Here, the statements attributed to Mercer, when taken in context, are insufficient to create a reasonable inference that plaintiff's age was the "but for" cause of his discharge. Gross, 129 S.Ct. at 2350. Each reference to plaintiff's age was expressed in combination with concern about plaintiff's job performance. In addition, the statements were made at least five months prior to plaintiff's termination. Based on the remote temporal connection and the context in which the statements were made, they amount to no more than "stray remarks," which do not give rise to a reasonable inference that age was the "but for" cause of plaintiff's firing. Cf. Ramlet, 507 F.3d at 1153 (age-related comments considered stray remarks when made four months prior to adverse action and to employees not involved in the decision making process). As to sales manager Bowers, it is undisputed that he played no role in the decision to terminate plaintiff's employment. Thus, statements made by Bowers are also properly discounted as "stray remarks." Id. at 1149 (statements by non-decision makers and statements unrelated to the decisional process are to be considered "stray remarks.").

B. MHRA Claim

While federal courts will often address state and federal discrimination claims together, see Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011), state claims that require a separate analysis, "[i]n most cases, . . . are dismissed without prejudice to avoid needless decisions of state law." Wierman v. Casey's

General Stores, 638 F.3d 984 (8th Cir. 2011). Similarly, state law claims that raise novel and complex issues of state law may be remanded or dismissed without prejudice. 28 U.S.C. § 1367(c)(1).

In recent years, the analysis for a claim under the MHRA has diverged significantly from the analysis applied to comparable federal anti-discrimination statutes. Cf. Hill v. Ford Motor Co., 277 S.W.3d 659 (Mo. banc 2009). For instance, while plaintiff must satisfy a "but for" standard of causation for claims under the ADEA, plaintiff may recover on his claim of age discrimination under the MHRA so long as his age was a contributing factor in his discharge. Compare Gross, 129 S.Ct. at 2350 with Daugherty v. City of Md. Heights, 231 S.W.3d 814, 819 (Mo. banc. 2007). Missouri has also abandoned the McDonnell Douglas burden-shifting analysis in evaluating claims under the MHRA. Id. These changes have prompted the Eighth Circuit to require that district courts dismiss or remand MHRA claims where the federal claims have been dismissed through summary judgment and diversity jurisdiction is absent. Clark v. Matthews Intern. Corp., 628 F.3d 462 (8th Cir. 2010); E.E.O.C. v. Con-Way Freight, Inc., 622 F.3d 933 (8th Cir. 2010); Wierman, 638 F.3d 984.

Here, there is no diversity of citizenship of the parties. Accordingly, the Court will decline to exercise supplemental jurisdiction over plaintiff's age discrimination based on the MHRA. 28 U.S.C. § 1367(c). That claim will be dismissed without prejudice.

\* \* \* \* \*

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the defendants' motion for summary judgment [Doc. #33] is **granted** as to Count II and **denied as moot** as to Count I.

**IT IS FURTHER ORDERED** that the defendants' motion to strike the affidavit of Bill Beattie [Doc. #44] is **denied as moot**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 19th day of January, 2012.